UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRYAN A. DONEY,

 Petitioner,

v.

MAGGIE MILLER-STOUT,

 Respondent.

Case No. C06-5357FDB

REPORT AND RECOMMENDATION

**NOTED FOR:
December 29th, 2006**

This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b) and local Rules MJR 3 and 4.

**INTRODUCTION AND SUMMARY CONCLUSION**

Petitioner challenges a 2000 Mason County conviction by jury trial for two counts of first degree child molestation. He was sentenced to 87 months incarceration and 36 months of community placement (Dkt. # 17, Exhibit 1). Having reviewed the pleadings and the record the court concludes this petition is without merit as to the only exhausted federal claim. The other claim

REPORT AND RECOMMENDATION- 1

in the petition is not raised as a federal claim and is procedurally barred. The petition should be **DISMISSED**.

## FACTS

The Washington State Court of Appeals summarized the facts as follows:

> The State's evidence included the testimony of the two victims and Doney's statements to Shelton Police Detective Rocky Pfitzer. The victims were Ca.W. and Ch.W., the children of one of Doney's friends. Ca.W., who was ten years old at the time of the crime, testified that she and Ch.W. were friends of Doney's daughter, Shylene, and they and their younger brother spent the night of April 10, 2000 (the first day of spring break) at Doney's apartment. She said that while they were watching a Star Wars movie, Doney picked her up and put her on his lap. He pulled up her shirt and tickled her tummy. Then he forced her legs apart, slid his hand down under her clothes and rubbed her "private." She told him she had to go to the bathroom, although she really did not, and left the room. She went to the bathroom, then to Shylene's room. While she was there, Doney came in and said he was sorry.
>
> Ch.W. was nine at the time of the crime. She testified that before dinner, all of the four children were playing in Shylene's room. She was on the bed, and the others were on the floor. Doney came in, got onto the bed, and rubbed her crotch over the top of her nightgown. She "moved around" until he stopped.
>
> Both girls agreed that in the morning after they talked about these incidents, they had decided not to spend a second night at Doney's apartment, and they had told their mother they wanted to come home. Their mother sent them, instead, to an older sister's house, where they stayed for several days. They told their mother what happened as soon as they got home.
>
> Detective Pfitzer arrested Doney at a Denny's Restaurant, where he was at work. After initial denials, Doney signed a written statement in which he admitted that he put a hand inside Ca.W.'s clothes and touched her between the legs and touched Ch.W. between the legs on the outside of her clothing.

(Dkt. #17, Exhibit 4, pages 2 and 3).

In July of 2000 the trial court held a Washington Criminal Rule 3.5 hearing to determine the admissibility of Mr. Doney's signed written statement to Detective Pfitzer (Dkt. # 17, Exhibit 22 and 23). At that hearing petitioner argued his signed written admissions were inadmissible because he was taking a combination of prescription pain killers (vicodin) and over the counter antihistamines. Petitioner argued the side effects of the combination of the medications he was taking made his statement involuntary. Petitioner argued the side effects of the medication left him mentally "goofy, drowsy. You know, not – just tired, really tired." (Dkt. # 17, Exhibit 22, Page 53). Petitioner testified he did not clearly recall the entirety of his interview with Detective Pfitzer and he did not

REPORT AND RECOMMENDATION- 2

remember signing either his advisement of rights form, or the admissions statements (Dkt. # 17, Exhibit 22, Page 56).

Mr. Doney argues that he stated he thought he should have an attorney during Detective Pfitzers' questioning him. Mr. Doney alleges he was told it was just an interview (Dkt. # 17, Exhibit 22, page 57). On cross examination Detective Pfitzer testified Mr. Doney stated "Maybe I should talk to an attorney." Detective Pfitzer testified he asked if they should stop the interview and asked him "do you want an attorney." Detective Pfitzer testified Mr. Doney indicated he did not want an attorney and the interview should continue (Dkt. # 17, Exhibit 22, page 37).

On rebuttal Detective Pfitzer testified Doney's demeanor and alertness at the 3.5 hearing in July of 2000 was nearly identical to the level he observed on April 18th, 2000 when the interview took place (Dkt. # 17, Exhibit 23, page 100). He denied Mr. Doney had acted goofy, drowsy, or sleepy (Dkt. # 3, Exhibit 23, page 101). On direct examination Detective Pfitzer testified Mr. Doney's demeanor was "upset, worried, very cognitive of what was going on around him, real talkative." (Dkt. # 17, Exhibit 23, page 24).

The trial court ruled the statement was admissible. The court held defendants argument regarding medication went to the weight the jury should give the statement and not the statements admissibility (Dkt. # 17, Exhibit 23, page 122).

The trial court ruled Mr. Doney did not exercise his right to counsel "because it isn't enough to say maybe I should have a lawyer, I think maybe I should have a lawyer, no, let's go ahead, forget it." (Dkt. # 17, Exhibit 23, page 123).

PROCEDURAL HISTORY

The procedural history of this case is confusing. The main reason for the confusion is that the original direct appeal was dismissed then reinstated several years later. An appeal was filed on October 12th of 2000 under cause number 26535-4-11 (Dkt. # 17, Exhibit 12, attached exhibit "c"). This appeal was dismissed by the Washington State Court of Appeals as it was filed more than 30 days after the finding of guilt. (Dkt. # 17, Exhibit 12, attached exhibit "c"). Several years later the appeal was apparently reinstated and briefing was filed in 2004 and 2005 under the same cause

REPORT AND RECOMMENDATION- 3

number.  The appeal was eventually dismissed in July of 2005 (Dkt. # 17, Exhibit 4).  The second reason for confusion is the Washington State Supreme Court's holding a motion to modify a ruling denying discretionary review in abeyance while the reinstated direct appeal was pending (Dkt # 17, Exhibit 16 and 18).

The court will set forth the filings pertinent to this habeas petition by date:

1. Mr. Doney was convicted September 7th, 2000 (Dkt. # 17, Exhibit 1)

2. A late appeal was filed on October 12th, 2000 and assigned cause number 26535-4-II.  No further action was taken.  On February 20th, 2001 the appeal was dismissed. (Dkt. # 17, Exhibit 12, attached exhibit "c").

3. Mr. Doney filed a personal restraint petition on November 25th, 2002 that was assigned cause number 29740-0-II (Dkt. # 17, Exhibit 11).

4. On April 3rd 2003 personal restraint petition number 29740-0-II was dismissed as untimely (Dkt. # 17, Exhibit 13).

5. On May 5th, 2003 Mr. Doney moved for discretionary review from the dismissal of 29740-0-II (Dkt. # 17, Exhibit 14).

6. On June 30th, 2003 the Washington State Supreme Court denied review.  In that order the court invited Mr. Doney to file a motion to reinstate his direct appeal in the state court of appeals (Dkt. # 17, Exhibit 16). **A motion to modify this ruling was held in abeyance until the reinstated appeal was denied on the merits and was then dismissed on January 10th, 2006 (Dkt. # 17, Exhibit 18).**

7. October of 2004 Mr. Doney files another Personal Restraint Petition and is assigned cause number 32441-5-II (Dkt. # 17, Exhibit 5).

8. Mr. Doney's original direct appeal is apparently reinstated and on January 19th, 2005 counsel for Mr. Doney filed an opening brief (Dkt. # 17, Exhibit 6).

9. On July 14th, 2005 the Washington Court of Appeals considered the combined Personal Restraint Petition under cause number 32441-5-II and the reinstated direct appeal under cause number 26535-4-II on the merits and denied relief (Dkt. # 17, Exhibit 4).

10. Mr. Doney filed a motion to modify the courts ruling July 19th, 2005 (Dkt. # 17, Exhibit 8).

11. The Washington State Court of Appeals denied the motion to modify the ruling on September 23rd, 2005 (Dkt., # 17, Exhibit 9).

12. The motion to modify that was being held in abeyance by the Washington State Supreme Court was then considered (Dkt. # 17,

REPORT AND RECOMMENDATION- 4

| | | |
|---|---|---|
| 1 | | Exhibit 18). The mandate from the Washington State Court of Appeals issued on June 8th, 2006 (Dkt. # 17, Exhibit 10). |
| 2 | 13. | Mr. Doney filed his federal habeas petition in this court June 27th, 2006 (Dkt. # 1). |
| 3 | 14. | The respondent concedes the petition is exhausted as to one issue and argues the other issue is unexhausted and procedurally barred because it was not argued as a federal issue in the Washington State Court of Appeals (Dkt. # 16). |

In his reinstated direct appeal Mr. Doney raised two issues:

1    Given the totality of the circumstances, the trial court erred in finding Doney's statement to Det. Pfitzer admissible.

2.    There was insufficient evidence elicited at trial to find Doney guilty of two counts of child molestation in the first degree beyond a reasonable doubt.

Mr. Doney's federal petition raises the same two issues and refers the court to the brief filed in the Washington State Court of Appeals (Dkt. # 5).

### EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

### STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a

REPORT AND RECOMMENDATION- 5

constitutional dimension. <u>Engle v. Isaac</u>, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. <u>Lewis v. Jeffers</u>, 497 U.S. 764 (1990); <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

A.  <u>Exhaustion</u>.

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. <u>Duncan v. Henry</u>, 513 U.S. 364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. <u>Id</u>, *citing* <u>Picard v. Connor</u>, 404 U.S. 270 (1971) and <u>Anderson v. Harless</u>, 459 U.S. 4 (1982).

Given that the Washington State Supreme Courts held petitioner's motion to modify the ruling denying discretionary review in abeyance until after petitioner's reinstated direct appeal had been ruled on, the court considers the two issues raised in the direct appeal to have been presented to the States Highest Court.

REPORT AND RECOMMENDATION- 6

Petitioner's second issue, sufficiency of the evidence, is not raised or argued as a federal constitutional violation (Dkt. # 17, Exhibit 6, pages 17 to 21). The issue is discussed only under Washington State law and no federal claim is discussed.

The habeas petition filed by petitioner in this case relies on the reinstated direct appeal brief filed January 19th, 2005 with the Washington State Court of Appeals (Dkt. # 5). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Duncan v. Henry, 513 U.S. 364(1995) *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). The claim was not presented as a federal claim. Petitioners second claim is unexhausted.

B.  Procedural Bar.

Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Here, however, petitioner is barred from filing another petition in state court as any attempt to file another petition will be deemed successive. See, RCW10.73.140.

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice." or petitioner demonstrates cause and prejudice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner here cannot show cause and prejudice as he was allowed to reinstate his direct appeal and had a motion regarding discretionary review held in abeyance until his direct appeal was concluded.

To show cause in federal court petitioner must show that some objective factor external to the defense prevented petitioner from complying with state procedural rules relating to the presentation of his claims. McCleskey v. Want, 499 U.S. 467, 493-94 (1991). Here, petitioner simply failed to address his sufficiency of the evidence claim as a federal violation and did not place the state court on notice it was reviewing this claim as an alleged violation of a right secured by the United States Constitution. Thus, petitioner cannot show cause that excuses his procedural default in state

REPORT AND RECOMMENDATION- 7

court. Accordingly, the second claim is procedurally defaulted and should not be considered.

   C.   On the merits.

In denying Mr. Doney's first claim the Washington State Court of Appeals stated:

> Self incriminating statements obtained from a defendant who is in custody are presumed to be involuntary unless the State can show that the defendant knowingly and voluntarily waived his Fifth Amendment privilege. *State v. Jacobsen,* 95 Wn. App 967, 973 (1999). In ruling on the admissibility of a statement, the court considers the totality of the surrounding circumstances. *State v Cusshing,* 68 Wn. App. 388, 392, *review denied*, 121 Wn.2d 1021 (1993). The influence of drugs can, of course, be a factor. *See State v. Rueben,* 62 Wn. App. 620, 625 *review denied,* 118 Wn.2d 1006 (1991). However, the mere claim of intoxication does not render a defendant's statement involuntary. There must be evidence of the effect of the intoxicants. *See State v Gardner,* 28 Wn. App. 721, 723-24, *review denied,* 95 Wn.2d 1927 (1981). The trial court's decision on admissibility will not be disturbed if there is substantial evidence in the record from which the court could have found by a preponderance that the defendant's statements were voluntary. *Cushing,* 68 Wn. App. At 393.
>
> Doney testified at the CrR 3.5 hearing that he had taken four pills in the four hours before he was arrested. He stated that the vicodin made him drowsy and really tired. He presented the testimony of pharmacist Richard Anderson that the side-effects of vicodin included drowsiness, tiredness, and mental aberrations, i.e. not being able to relate time and space properly. Anderson also testified that these side-effects were not inevitable.
>
> Detective Pfitzer testified that Doney was upset and worried, but he did not appear to be drowsy or confused. He was very cognizant of what was going on around him, and his responses were appropriate to the questions asked.
>
> Doney maintained that he did not remember much about the interview. However, as the trial court noted, he was very clear about some things. (1) he remembered that he was putting on pots of soup to cook when Detective Pfitzer arrived. (2) He remembered that he was handcuffed and placed in the front passenger seat of Pfitzer's car. While there, he tired to read a paper on the seat next to Pfitzer, and Pfitzer took it away. (3) He remembered that Pfitzer told him he was being arrested because the victims' mother told police that if they did not do something about the crimes, she would. (4) He remembered asking for a lawyer, and being denied one. (5) He remembered that Pfitzer told him to sit down while Pfitzer was typing out his statement. He said Pfitzer said it was none of his business. (6) He remembered being frisked at the jail, and he remembered what clothes he was wearing.
>
> Detective Pfitzer's testimony in combination with the evidence of Doney's clear memory of details of the arrest and interview provides substantial evidence that he was not unduly affected by any drug he may have taken. This conclusion is further supported by Doney's obvious understanding of his rights and discussion whether he wanted to speak to a lawyer.
>
> Doney also contends that Detective Pfitzer denied him the right to have an attorney present. Once a suspect requests the presence of an attorney, there can be no further questioning until an attorney has been provided, or the suspect, himself, re-

REPORT AND RECOMMENDATION- 8

establishes communication. *Edwards v Arizona,* 451 U.S. 477, 482 (1981).

> Doney testified that before the interview began, he said he thought he should have an attorney. He asserted that Detective Pfitzer replied "this is just an interview," and began questioning him. Detective Pfitzer testified that part way through the interview Doney said, "Maybe I should talk to an attorney." Pfitzer then asked, "do you want to stop? Do you want an attorney?" And Doney replied, "No, Let's go." The trial court believed Pfitzer, and that credibility determination is not subject to review. *Camarillo,* 115 Wn.2d at 71.

(Dkt. # 17, Exhibit 4, pages 4 to 6).(Footnotes omitted).

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. This privilege is applicable to the state through the Due Process Clause of the Fourteenth Amendment. <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964).

To determine whether a confession is voluntary, a reviewing court examines whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with constitutional requirements. <u>Miller v. Fenton</u>, 474 U.S. 104, 112 (1985). Prior to a custodial interrogation, a defendant must be advised of his Fifth Amendment rights against self incrimination. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

The Fifth Amendment is not violated unless there is coercive police misconduct causally related to the confession. <u>Colorado v. Connelly</u>, 479 U.S. 157, 163-74 (1986); <u>United States v. Washington</u>, 431 U.S. 181, 187 (1977).

Thus, the Washington State Court of Appeals identified the correct standard of review (Dkt. # 17. Exhibit 4). There is nothing in the state court findings that resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Nor did the state court findings result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. The credibility determinations made by the trial court at the 3.5 hearing are supported by substantial evidence. Mr Doney is not entitled to relief in this petition.

## <u>CONCLUSION</u>

The only exhausted issue in the petition is without merit. The other issue is procedurally barred and was not presented as a federal claim. Accordingly, the petition should be **DISMISSED**

REPORT AND RECOMMENDATION- 9

**WITH PREJUDICE.** A proposed order accompanies this report and recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **December 29th, 2006** as noted in the caption.

Dated this 4th day of December, 2006.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION- 10